Abbas Kazerounian, Esq. (SBN: 48522)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523

Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile: (619) 297-1022

*Counsel for Plaintiff and the Putative
Class*

## IN THE UNITED STATE DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KARESTIN THOMPSON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>NATIONAL DEBT RELIEF, LLC,<br><br>Defendant. | Case No. 2:20-cv-2868<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C § 227**<br><br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THIS ACTION

1.      Plaintiff Karestin Thompson ("Plaintiff"), individually and on behalf of the proposed classes defined below, brings this class action lawsuit for damages and injunctive relief resulting from the unlawful actions of Defendant NATIONAL DEBT RELIEF, LLC ("National Debt Relief" or "Defendant").

2.      This case is brought to enforce the consumer privacy provisions afforded by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3.      As detailed below, National Debt Relief negligently, knowingly and/or willfully placed unsolicited calls to Plaintiff's cellular telephone in violation of the TCPA. Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing calls without prior express written consent.

4.      Plaintiff alleges as follows upon personal knowledge as to herself and her own experiences and, as to all other matters, upon information and belief including due investigation conducted by her attorneys.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

6.      This Court has personal jurisdiction over Defendant because its principal place of business is located in the State of New York. From New York, Defendant engaged in a nationwide telemarketing campaign that caused injury to recipients nationwide, including Plaintiff, who is a resident of this District.

CLASS ACTION COMPLAINT

7.     Venue is proper in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events alleged herein occurred within this District.

## PARTIES

8.     Plaintiff Karestin Thompson is an individual who, at all relevant times, resided in Ventura, California.

9.     Defendant NATIONAL DEBT RELIEF, LLC is a limited liability company organized under the laws of the State of New York and with its principal place of business in New York, New York.

10.     National Debt Relief is a debt settlement company that negotiates settlements with creditors on behalf of individuals and families.[1]

11.     National Debt Relief is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

13.     The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff.  "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden

---

[1]     "About Us", available athttps://www.nationaldebtrelief.com/aboutus/ (last accessed March 24, 2020).

**CLASS ACTION COMPLAINT**

on the consumer." TCPA, Pub.L. No. 102-243, § 11.   Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

15.   Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. at §§ 12-13; *see also Mims*, 132 S. Ct. at 744.

16.   As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.   A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call.   An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

17.   The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

18.    Calls are subject to the TCPA.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

19.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

20.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

21.    To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA.  *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (finding Defendant "did not show a single instance where express consent was given before the call was placed.")

22.    The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

# FACTUAL ALLEGATIONS

23.     Plaintiff Karestin Thompson is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(805) 232-XXXX.

24.     On April 19, 2016, Plaintiff registered her phone number with the National Do Not Call registry.

25.     Beginning in or around 2019, Defendant transmitted, by itself or through an intermediary or intermediaries, calls advertising its goods and services to Plaintiff's telephone number without Plaintiff's "prior express written consent."

26.     On November 13, 2019, Plaintiff received a phone call from Defendant from the number (805) 271-6570.

27.     When Plaintiff answered her cell phone, there was a prerecorded message that instructed her to press a number to speak with a representative.

28.     During that call, Plaintiff spoke with a representative and asked to no longer receive phone calls and to be taken off the contact list.

29.     Nonetheless, Defendant, on March 2, 2020, Defendant placed another automated phone call to Plaintiff's cellular telephone number, this time from the number (805) 669-1665.

30.     When Plaintiff answered her cell phone, there was a prerecorded message that instructed her to press a number to speak with a representative.

31.     Plaintiff spoke with a representative and asked for a second time to no longer receive phone calls and to be taken off the contact list.

32.     True and correct copies of the automated calls that Plaintiff received from Defendant are reproduced below:

**CLASS ACTION COMPLAINT**

6:24 ⌁                                      ⦁⦁⦁⦁ LTE 🔋

‹ Search                                           Edit

**NA**

# National Debt Edgucation Refief
# Ask For No More Call 11-13

💬 message    📞 call    📹 video    ✉ mail    💲 pay

phone
+1 (805) 271-6570

Notes

Send Message

Share Contact

Add to Favorites

Share My Location

Block this Caller

★ Favorites    🕐 Recents    👥 Contacts    ⠿ Keypad    ◖◗ Voicemail

7

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    33.    Each of the unsolicited calls constitutes an "advertisement" or
24  "telemarketing" message within the meaning of the TCPA and its implementing
25  regulations because each such message was aimed at promoting the commercial
26  availability of Defendant's products and services and ultimately selling such products and
27  services to Plaintiff and the class members.
28

34.     Defendant offered such products and services for sale to Plaintiff for the purpose of deriving commercial profit from the purchase of any such products or services ultimately made by Plaintiff and the class members.

35.     Plaintiff did not give Defendant prior express written consent to call her cellular telephone number by using an ATDS.

36.     Plaintiff is not now, nor has she ever been, a National Debt Relief customer.

37.     Plaintiff does not have an account or business relationship with National Debt Relief.

38.     Plaintiff did not provide her cellular telephone number to Defendant, nor did she ever provide express consent to Defendant to place calls to her cellular telephone for any reason.

39.     The telephone system Defendant used to send the message constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

40.     Upon information and good faith belief, and in light of the nature and character of the calls at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing calls at issue were made by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

41.     Upon information and belief, no human directed any single phone call to Plaintiff's cellular telephone number.

42.     In addition, upon information and belief the hardware and software combination utilized by Defendant has the capacity to store and to dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

43.     Defendant did not have Plaintiff's prior express consent to place automated calls to Plaintiff on her cellular telephones.

**CLASS ACTION COMPLAINT**

44.    Receipt of Defendant's unauthorized calls drained Plaintiff's phone batteries and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

45.    Defendant did not place the calls for an emergency purpose.

46.    Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

47.    Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do Not Call Registry (the "DNC Registry").  *See* 47 C.F.R. § 64.1200 (c)(2).

48.    According to the Federal Trade Commission, the DNC Registry, which was established in 2003, currently has over 293,000,000 active registrations.

49.    These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.*

50.    Because a telephone subscriber listed on the DNC Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the DNC Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id.* § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id.*

51.    A person whose number is on the DNC Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. *See* 47 U.S.C. § 227(c)(5).

52.    Telemarketers who wish to avoid calling numbers listed on the DNC Registry can easily and inexpensively do so by "scrubbing" their call lists against the DNC Registry

**CLASS ACTION COMPLAINT**

database. The scrubbing process identifies those numbers on the DNC Registry, allowing telemarketers to remove those numbers and thereby ensure that no calls are placed to consumers who opt-out of telemarketing calls.

53. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their calls lists against the DNC Registry at least once every thirty-one days. *See* 16 C.F.R.§ 310.4(b)(3)(iv).

54. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

55. The provision that establishes a private right of action against an entity that violates the DNC Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. *See* 47 U.S.C. § 227(c)(5) (emphasis added).

56. Upon information and good faith belief, Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice to place calls to individuals, just as it did to Plaintiff's cellular telephone here.

57. Upon information and good faith belief, Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer to cease the placement of calls.

58. Upon information and good faith belief, Defendant's corporate policy is structured so as to continue to place calls to individuals like Plaintiff, despite the fact these consumers request that Defendant cease the placement of calls.

59. Defendant continued to call Plaintiff from telephone numbers similar to her number to deceitfully entice her to answer the call.

60. Upon information and good faith belief, Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

61.     As a result of each of the calls described above, Plaintiff and the putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation.

62.     Plaintiff and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls. Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's calls were incoming, and trespass upon their respective chattels.

63.     All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiff and putative Class Members by using an ATDS to call their cellular telephone numbers.

64.     In response to Defendant's unlawful conduct, Plaintiff filed this lawsuit and seeks an injunction requiring Defendant to cease all unsolicited cellular telephone calls and an award of statutory damages and actual damages to putative Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## **STANDING**

65.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See, Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### **The "Injury In Fact" Prong**

66.     Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

**CLASS ACTION COMPLAINT**

67.     For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012).  In this case, Defendant made numerous unsolicited phone calls to Plaintiff's cellular telephone, using an ATDS. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto.*

68.     For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way."  *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendant invaded Plaintiff's privacy and peace by repetitively calling her cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time answering these calls. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

69.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that her injuries are traceable to the conduct of Defendant.

70.     The above calls were directly and explicitly linked to Defendant. The calls are the sole source of Plaintiff's and the Class' injuries. Therefore, Plaintiff has alleged facts that show that their injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

71.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

72.     In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227.  The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

73.     Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as representatives of the following TCPA Class and Subclass (collectively referred to as "Class"):

> All persons throughout the United States (1) to whom Defendant placed phone calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification; and (5) wherein such calls were not placed for emergency purposes.

The subclass consists of:

> All persons within the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time within applicable limitations period, more than one call within any twelve-month period was placed by Defendant (the "Subclass").

75.     Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

76.     Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

77.     **Numerosity:** Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

78.     The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant called thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous

14

that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

79.   **Ascertainability:** The members of the class are ascertainable because the class is defined by reference to objective criteria.

80.   In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

81.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving unsolicited phone calls to her cellular telephone from an ATDS. Thus, her injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to place the unsolicited phone calls to Plaintiff's cellular telephone number.

82.   Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

83.   Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

84.   Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally calling their cellular phones using an ATDS. Plaintiff and the class were damaged thereby.

85.   **Adequacy:** Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom they are similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

86.   Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

87.   Plaintiff will vigorously pursue the claims of the members of the class.

**CLASS ACTION COMPLAINT**

88.     Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

89.     Plaintiff's counsel will vigorously pursue this matter.

90.     Plaintiff's counsel will assert, protect and otherwise represent the members of the Class.

91.     Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

92.     **Predominance**: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

93.     **Commonality:** There are common questions of law and fact as to all members of the Class, including but not limited to the following:

- What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls;

- Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to place unsolicited phone calls to Class Members;

- Whether Defendant's conduct violated the TCPA;

- Whether Defendant should be enjoined from engaging in such conduct in the future

- Whether Defendant had any policy regarding scrubbing lists of numbers to be called against the DNC registry and

16

**CLASS ACTION COMPLAINT**

- The availability of statutory penalties, among others.

94. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts;

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests;

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant;

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class;

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them;

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law;

**CLASS ACTION COMPLAINT**

- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy and

- There will be little difficulty in the management of this action as a class action.

95.    Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

96.    Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

97.    This suit seeks statutory damages under the TCPA and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### Negligent Violation of the Telephone Consumer Protection Act

### 47 U.S.C. § 227(b)(1)(A)(iii)

### (On behalf of Plaintiff and the TCPA Class)

98.    Plaintiff incorporates herein all preceding factual allegations.

99.    Defendant and/or its agents placed unsolicited phone calls to Plaintiff's cellular telephone and the cellular telephones of the other members of the TCPA Class using an ATDS.

100.    Defendant placed these phone calls *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

101.    Defendant's conduct was negligent, or willful or knowing.

102.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1).

103.    As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages for each violation pursuant to 47 U.S.C. § 227(b)(3)(B).

**CLASS ACTION COMPLAINT**

104.   Plaintiff and members of the putative TCPA class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by placing calls, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

105.   Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing calls to Plaintiff's cellular telephone numbers without prior express written consent.

106.   As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the TCPA class, are entitled to damages in an amount to be proven at trial.

## COUNT II

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the TCPA Class)**

107.   Plaintiff incorporates herein all preceding factual allegations.

108.   The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

109.   Defendant placed the calls despite knowing that Plaintiff expressly requested to stop all of the unlawful and unsolicited calls.

110.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**CLASS ACTION COMPLAINT**

# COUNT III

## Violations of the Telephone Consumer Protection Act

## 47 U.S.C. § 227(c)(5)

## (On behalf of Plaintiff and the Subclass)

111.   Plaintiff incorporates herein all preceding factual allegations.

112.   Defendant and/or its agents placed more than one year unsolicited phone call to each of the Subclass members within a one year period.

113.   Defendant placed these phone calls *en masse* without the consent of Plaintiff and the other members of the Subclass.

114.   Defendant's conduct was willful or knowing.

115.   Defendant has, therefore, violated 47 U.S.C. § 227(c)(5).

116.   As a result of Defendant's conduct, Plaintiff and the other members of the Subclass are each entitled to an award of $1,500 in damages, for each violation.

117.   Plaintiff and members of the Subclass are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by placing calls, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

118.   Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing calls to Plaintiff's cellular telephone numbers without prior express written consent.

119.   As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the Subclass, are entitled to damages in an amount to be proven at trial.

**CLASS ACTION COMPLAINT**

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

- Certify the Class and Subclasses as requested herein;

- Appoint Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

- Appoint Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

- Provide such further relief as may be just and proper.

In addition, Plaintiff and the Class members pray for further judgment as follows against Defendant:

### **Negligent Violation of**
### **The TCPA, 47 U.S.C. § 227 Et Seq.**

120.   As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

121.   Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future;

122.   Prejudgment interest;

123.   Reasonable attorneys' fees and costs; and

124.   Any other relief the Court may deem just and proper.

### **Knowing/Willful Violation of**
### **The TCPA, 47 U.S.C. § 227 Et Seq.**

125.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

**CLASS ACTION COMPLAINT**

126.   Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future;

127.   Prejudgment interest;

128.   Reasonable attorneys' fees and costs; and

129.   Any other relief the Court may deem just and proper.

### The TCPA, 47 U.S.C. § 227(c)

130.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each DNC Subclass member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5);

131.   Injunctive relief prohibiting such conduct in the future;

132.   Prejudgment interest;

133.   Reasonable attorneys' fees and costs; and

134.   Any other relief the Court may deem just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated:  March 25, 2020                         Respectfully submitted,

                                                                      *s/ Abbas Kazerounian*
                                                                      Abbas Kazerounian, Esq. (SBN: 48522)
                                                                      ak@kazlg.com
                                                                      *Counsel for Plaintiff and the Putative Class*

**CLASS ACTION COMPLAINT**